<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHUN KWONG CHING, | : |
| Petitioner, | : Civil Action No. 06-2492 (SRC) |
| v. | : O P I N I O N |
| B.I.C.E./D.H.S., et al., | : |
| Respondents. | : |

APPEARANCES:

    CHUN KWONG CHING, Petitioner, <u>Pro Se</u>
    182751
    B100W
    Hudson County Correctional Center
    35 Hackensack Avenue, P.O. Box 266
    South Kearny, New Jersey 07860

    CHRISTOPHER J. CHRISTIE, United States Attorney
    RUDOLPH ANDREW FILKO, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey 07102
    Attorneys for Respondent

**HAYDEN, District Judge**

    Petitioner, Chun Kwong Ching ("Ching"), is currently being detained by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("BICE") at the Hudson County Correctional Center in South Kearny, New Jersey, pending his removal from the United States. He filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his indefinite detention as unlawful and unconstitutional under

Zadvydas v. Davis, 533 U.S. 678 (2001) and Clark v. Martinez, 543 U.S. 371 (2005).

The named respondents are the Bureau of Immigration and Customs Enforcement ("BICE") of the United States Department of Homeland Security ("DHS");[1] Michael Chertoff, DHS Secretary; Alberto Gonzales, U.S. Attorney General; and Edmond C. Cicchi, Warden of Middlesex County Adult Correction Center where petitioner was detained at the time he filed this habeas petition on or about June 2, 2006. The Government filed an Answer to the petition on August 25, 2006, with a certified copy of the relevant administrative record. Petitioner filed a reply brief on September 20, 2006.

## BACKGROUND

Ching is a native and citizen of China, but later resettled in Hong Kong. He illegally entered the United States in 1984 and was immediately detained at the Los Angeles, California airport by immigration officials. Ching fled custody at that time and was later found and detained by the U.S. Border Patrol in Texas. On August 8, 1996, an Immigration Judge ordered Ching's

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). The Bureau of Immigration and Customs Enforcement of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

deportation. Ching voluntarily departed the United States on November 11, 1990. He returned to the United States illegally sometime in the 1990s using fraudulent travel documents and visa. On November 6, 1995, Ching was convicted in the United States District Court for the Eastern District of New York on charges of racketeering involving murder on federal property, kidnaping, and use of a firearm during a crime of violence. Ching was sentenced to 12 years in prison.

On August 4, 1999, a Notice of Intent/Decision to Reinstate Prior Order (Form I-871) was served on Ching. On August 26, 1999, an immigration judge determined that Ching was subject to removal based on the August 8, 1996 Order and ordered that Ching be removed from the United States to China.

On February 17, 2006, on or about completion of Ching's federal prison sentence, the BICE placed Ching in custody for removal to China. Respondents admit that Ching has remained in immigration custody since February 17, 2006.

Respondents contend that Ching has refused to cooperate in obtaining the travel documents necessary to effect his removal to China. In particular, respondents allege that Ching provided no information to establish his identity and citizenship. The BICE has had to rely on old documents submitted in the 1980s to obtain travel documents. Respondents also state that Ching was issued a Notice of Failure to Cooperate, pursuant to 8 C.F.R. § 241.4(g),

on June 28, 2006, and two separate Warnings for Failure to Depart (Form I-229) on March 15, 2006 and August 16, 2006, for Ching's repeated failure to cooperate with the BICE in obtaining travel documents for his removal to China. Respondents contend that these actions by Ching violate Section 243(a) of the Immigration and Nationality Act ("INA").

A post order custody review was conducted by the BICE on June 28, 2006 and it was determined that Ching should remain in detention pending his removal based on his repeated refusal to cooperate in obtaining travel documents from China and because Ching has failed to show that he would not be a flight risk or danger to the community if released. This decision took into account Ching's past criminal behavior and his history of absconding from custody.

Ching argues that his removal is not foreseeable at this time because China[2] and Hong Kong have refused to issue travel documents despite petitioner's several written attempts to obtain same from the Chinese consulate. Ching claims that China will not issue a travel document based on an unwritten rule that a native will voluntarily lose their citizenship if he/she is a near relative of a foreign national or has already settled

---

[2] The record from BICE states that an application for travel documents was made to Taiwan (or the Republic of China), not China (the People's Republic of China). It is not clear whether Ching's reference to China refers to Taiwan or the People's Republic of China, or possibly both.

abroad. (Petition at ¶ 9). He provides no evidence for his contention that Hong Kong will not issue travel documents.

Ching further disputes respondents' answer and provides a much different chronicle of events to effectuate his removal. First, Ching states that he completed and signed forms to apply for travel documents to China on March 13, 2006 when Deportation Officer ("DO") Jose Peralta brought the forms to petitioner on that same date. Two days later, on March 15, 2006, DO Peralta gave Ching a Warning of Failure to Depart and a Notice to Alien of File Custody Review. Ching signed both forms as requested. (Pet. Reply at ¶¶ 1, 2).

On April 3, 2006, the Chinese consul in New York informed petitioner that his application for travel documents was revoked because Ching lost his citizenship when his family migrated to Hong Kong. Another application for travel documents to Hong Kong was faxed to Ching at the Middlesex County Jail, and Ching completed the forms and returned it to his social worker at the jail facility to fax same to the Hong Kong Consulate in New York. (Pet. Reply at ¶ 3).

On April 20, 2006, DO Kerry Gill asked petitioner for a copy of the application for travel documents because the Consulate needed an original signature on the document. Ching signed another copy of the travel document application and gave it to DO Gill. Ching also claims that, on June 3, 2006, he mailed letters

5

to six other countries seeking entry. Two countries have responded to date, but have denied Ching entry. (Pet. Reply at ¶¶ 4, 5).

On June 17, 2006, Ching wrote to the DHS requesting a copy of his passport. After receiving a Notice of Failure to Comply on June 29, 2006, Ching wrote to the DHS on July 8, 2006 explaining his efforts to obtain travel documents. On July 27, 2006, Ching allegedly was informed by BICE officers that both China and Hong Kong will not issue any travel documents to Ching. Another warning (Form I-229) was served on Ching on August 16, 2006, which petitioner signed. On August 28, 2006, Ching completed an application for a British passport and sent it to the British Consulate. (Pet. Reply at ¶¶ 6-10). There is no information provided by either petitioner or respondents as to the status of Ching's request for a British passport.

## DISCUSSION

### A. Standard of Review

Ching seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, petitioner challenges his continued

detention since February 17, 2006.[3] He claims that his indefinite detention is constitutionally impermissible pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001) and Clark v. Martinez, 543 U.S. 371 (2005). Ching further denies the Government's claim that he has repeatedly refused to cooperate in effectuating his removal during the time he has been in BICE custody.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Respondents contend that Ching's refusal to cooperate in obtaining travel documents violates INA § 243(a), 8 U.S.C. § 1253(a)(1) and serves to extend the removal period pursuant to 8 U.S.C. § 1231(a)(1)(C) and 8 C.F.R. § 241.13. Respondents also note that release from detention was denied after Ching's June 28, 2006 post-order custody review because Ching failed to show

---

[3] At the time Ching filed this habeas petition on or about June 2, 2006, he was in BICE custody for only 3½ months, well within the six-month presumptive period for removal as enunciated by the Supreme Court in Zadvydas.

he would not be a flight risk and a danger to the community based on his past criminal behavior and history of absconding from custody.

B. **Discussion**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701. See also, e.g., Xi v. U.S. I.N.S., 298 F.3d 832, 839-40 (9th Cir. 2002); Kacanic v. Elwood, 2002 WL 31520362 (E.D. Pa. Nov. 8, 2002); Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1367-68 (N.D. Ga. 2002); Lema v. U.S. I.N.S., 214 F. Supp.2d 1116, 1117-18 (W.D. Wash. 2002), aff'd, 341 F.3d 853 (9th Cir. 2003).

In addition, in assessing whether an alien has made the required showing, it must be remembered that, while the Supreme Court in Zadvydas emphasized that the expiration of the six-month presumptively-reasonable period of detention did not mandate release, it also stated that as the period of detention grows "what counts as the 'reasonably foreseeable future' conversely shrinks." 533 U.S. at 701.

Here, the government does not dispute that Ching is not likely to be removed to China in the reasonably foreseeable future, but rather, contends that the six-month presumptively-reasonable period of Zadvydas does not apply because Ching has acted to prevent his own removal by failing to assist in obtaining travel documents from China and Hong Kong. See 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended

beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."). See also Abimbola v. Ridge, 2005 WL 588769 *2 (D. Conn. 2005)("a self-inflicted wound cannot be grounds for a Zadvydas claim").

However, the only evidence of Ching's failure to cooperate is the Deportation Officers' general, self-serving statements in the Post Order Custody Review Worksheet that "[t]he only efforts to obtain a travel document have been made by BICE officials, and these have been complicated by the subject's lack of cooperation."[4] Respondents have provided no evidence in support

---

[4] A file custody review was conducted on June 15, 2006. In that review, it was noted:

> The subject has provided no information to establish his identity and/or citizenship. In fact, he has not cooperated in any way with efforts to obtain a travel document. The only efforts to obtain a travel document have been made by BICE officials, and these have been complicated by the subject's lack of cooperation. BICE has relied solely on copies of identity documentation submitted [sic] the 1980's. One must conclude that his lack of cooperation is an intentional effort on his part to obstruct his removal from the US.
> Additionally, the subject has a history of absconding from custody in prior immigration proceedings. After being deported and returning unlawfully to the United States in the 1990's, he was convicted of Racketeering that included criminal behavior such as Murder on Federal Property, Kidnapping, and Use of a Firearm During a Crime of Violence. In additional [sic] to his lack of cooperation in the removal process, these factors exemplify the significant

of those conclusions, no reports from consular officials, no independent investigation, no affidavits, no notes of conversations, etc. To the contrary, the only document noted by the BICE in the Travel Document Status/History section of Ching's post-order custody review was a fax response from the Taipei Economic and Cultural Office in New York. The response states that Ching had never established a domicile in Taiwan and was deemed as "a national without registered permanent residence."

Ching, however, has provided evidence of cooperation, in the form of repeated telephone contacts with a Mr. Zhang of the Chinese Consulate in New York, as well as numerous letters to officials of other countries seeking admission.[5] He has completed and signed all applications for travel documents to Taiwan and Hong Kong, as requested. And it appears from the government's record, namely the travel document history, that they are merely awaiting communication from Hong Kong officials

---

       flight risk and danger to the community posed by this
       subject.
           Given these considerations, it is recommended that the
       subject be deemed non-compliant and remain in BICE custody
       at this time.

(Resp. Exhibit A).

    [5] Ching confirms that, on June 3, 2006, he sent letters to six countries without success. These countries included Sweden, Italy, Japan, Spain, the Republic of Singapore, and the United Kingdom. No country has accepted Ching's application to date. On August 28, 2006, he applied for a British Passport.

11

regarding the issuance of travel documents.[6] There is no evidence that Hong Kong's delay in issuing travel documents is the fault of petitioner.

Thus, respondents' allegation of non-cooperation does not appear to be based on any evidence of actual obstruction or delay by Ching. Consequently, respondents have not alleged a sufficient basis on which to detain Ching indefinitely. See, e.g., Abdel-Muhti v. Ashcroft, 314 F. Supp.2d 418 (M.D. Pa. 2004); Clark v. Ashcroft, 2003 WL 22351953 (E.D. Pa. Sept. 16, 2003).

Nevertheless, although this Court may have determined that Ching was not uncooperative in assisting the BICE in removal efforts, Ching has not demonstrated by sufficient evidence that there are any actual institutional barriers to his removal, see Zadvydas, 533 U.S. at 686 (alien Kim Ho Ma was from Cambodia, a country with which the United States has no repatriation agreement), nor has he presented evidence of any individual barriers to his repatriation, see Zadvydas (Zadvydas was a "stateless" individual). In order to state a claim under Zadvydas as asserted here, Ching not only must show post-removal

---

[6] Ching was informed by Mr. Zhang of the Chinese Consulate in New York that, under the nationality law of the People's Republic of China, Ching had lost his citizenship when he migrated with his family to Hong Kong, and that it is now up to the Hong Kong Special Administrative Region of China to decide whether to issue travel documents to Ching.

order detention in excess of six months, but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. See Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). No such showing was made in Ching's habeas petition or his reply to respondents' answer.

Mere passage of time may be sufficient under limited circumstances to establish that there is no likelihood of a petitioner's removal within the reasonably foreseeable future. Typically, the passage of time is significantly longer than six months. Here, however, Ching has remained in post order custody for about nine months. A completed application for travel documents from Hong Kong was sent in mid-May 2006, and thus, the BICE has been awaiting a response from Hong Kong for only six months at this point in time. There is no evidence that Hong Kong officials do not intend to issue travel documents, and the record shows that the BICE has been persistent in following up on the status of the travel documents from Hong Kong.

Thus, given that Ching's detention is only three months beyond the presumptively reasonable period as defined by Zadvydas,⁷ and that there is a reasonable explanation for the

---

⁷ While the Court does not find that Ching has been completely uncooperative with his removal efforts overall, it may be argued that Ching did initially delay efforts in obtaining travel documents from Hong Kong until he was in custody for almost three months. If that is true, then the removal period

13

delay which would militate against shrinking the "reasonably foreseeable future" for removal, the Court finds that Ching has not met his burden to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" at this time.

Ching also has received the process to which he was due with respect to his continuing detention pending removal. A recent post-order custody review took place in June 2006. Even if the review was somewhat perfunctory, the Court is not inclined to find the decision to continue custody to be anything other than a meaningful individualized determination of Ching's status pending receipt of travel documents from Hong Kong in the reasonably near future. There is simply no evidence put forth by petitioner that Hong Kong will refuse to issue travel documents. Therefore, the Court concludes that Ching's detention is not constitutionally impermissible at this juncture. Ching has not met his initial burden of showing that his removal is not reasonably foreseeable. Accordingly, the Court will deny this habeas petition without prejudice to Ching bringing a new petition for habeas relief should circumstances warrant, *i.e.*, in the event Hong Kong also refuses to issue travel documents and no other country will do so.

---

would be extended until such time as he began to cooperate, and the six month presumptively reasonable period would have just expired.

## CONCLUSION

For the reasons set forth above, this petition will be denied, without prejudice to Ching bringing a new petition should circumstances change and the Government fails to remove him in the reasonably foreseeable future. An appropriate order follows.

STANLEY R. CHESLER
United States District Judge

Dated: November 29, 2006